# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SABRINA M. JAMISON, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-15-430-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
|       Defendant. | ) |

## OPINION AND ORDER

The claimant Sabrina M. Jamison requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born December 30, 1970, and was forty-three years old at the time of the administrative hearing (Tr. 228). She has an eleventh grade education, and has worked as an outside deliverer, secretary, collection clerk, customer service representative, and insurance agent (Tr. 109, 114). The claimant alleges that she has been unable to work since January 1, 2006, due to fibromyalgia, sciatica, degenerative disc disease, hypothyroidism, migraine headaches, depression, and anxiety (Tr. 276).

## Procedural History

On November 21, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 8, 2014 (Tr. 57-74). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") perform a limited range of light work, *i. e.*, she could lift and/or carry twenty pounds occasionally and ten pounds

frequently; could sit/stand/walk for six hours total during an eight-hour workday; could occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; and could never reach overhead (Tr. 65). The ALJ also found the claimant required a sit/stand option defined as temporary changes in position from sitting to standing, and vice versa, with no more than one change in position every half hour without leaving the workstation (Tr. 65-66). Due to psychologically based factors, the ALJ further found the claimant could perform simple tasks with routine supervision, could have occasional contact with co-workers and supervisors, and no contact with the public (Tr. 66). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform in the national economy, *e. g.*, small products assembler, inspector packer, and electrical accessory assembler (Tr. 73-74).

## Review

The claimant contends that the ALJ erred by failing to: (i) find her fibromyalgia, arthritis, and mixed connective tissue disease were severe impairments, (ii) incorporate limitations in the RFC related to her muscle and joint pain, (iii) properly evaluate the opinion of consultative examiner Dr. Robert Spray, (iv) properly assess her credibility, (v) properly evaluate the Third Party Function Report submitted by her neighbor, and (vi) pose a proper hypothetical question to the vocational expert ("VE"). The Court finds the claimant's third and fourth propositions persuasive, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ determined that the claimant had the severe impairments of major depressive disorder, generalized anxiety disorder, personality disorder with avoidant features, minimal degenerative disc disease, pain disorder, hypertension, migraines with no photosensitivity, and obesity (Tr. 59-63). The medical record reveals that Dr. James Russell diagnosed the claimant with mixed connective tissue disease on February 24, 2006, after she reported significant joint pain "all over" (Tr. 457). At a follow-up appointment on May 15, 2016, the claimant indicated to Dr. Russell that a rheumatologist had diagnosed her with fibromyalgia since her last visit (Tr. 455). Dr. Russell diagnosed the claimant with fibromyalgia and obesity (Tr. 455).

The claimant was regularly treated at the Sallisaw Health and Wellness Center from February 24, 2011, through July 8, 2014 (Tr. 353-413, 432-42, 548-53). Her diagnoses included, *inter alia*, depression, sciatica, fibromyalgia, hypothyroidism, polyneuropathy, chronic pain, anxiety, lumbago, and common migraine without aura, and her treatment largely consisted of medication management (Tr. 353-413, 432-42, 548-53). Providers frequently noted the claimant's back was tender to palpation and/or that muscle spasms were present (Tr. 401, 404, 407, 435-36, 467-68, 477-78, 491, 502). On June 24, 2014, x-rays of the claimant's sacroiliac joints were unremarkable, and x-rays of her lumbar spine showed limbus type vertebra at L-4, and facet arthrosis at L5-S1 (Tr. 552-53).

On May 22, 2014, the claimant presented to Dr. Omar Silvestre, a rheumatologist, for evaluation of polyarthralgias (Tr. 543-47). She reported increased pain in her hips, low back, hands, elbows, knees, feet, and ribcage (Tr. 543). Lab test results showed a

positive antinuclear antibodies test; a negative extractable nuclear antigen antibodies test, rheumatoid factor, and anti-cyclic citrullinate peptide; normal erythrocyte sedimentation rate; and minimally elevated C-reactive protein (Tr. 543). X-rays of the claimant's hands, hips, and sacroiliac joints were normal (Tr. 543). On physical examination, Dr. Silvestre noted the claimant had diffuse pain in most joints and control points, but no synovitis or effusions, and that she had good range of motion (Tr. 544). Dr. Silvestre also noted there was no evidence of inflammatory arthritis, systemic lupus erythematosous, or other connective tissue disease, and that his musculoskeletal exam was unremarkable despite the claimant's reported muscle pain (Tr. 544). Dr. Silvestre opined that the claimant's symptoms were most likely consistent with fibromyalgia, and recommended aerobic exercise, weight loss, physical therapy, and continuation of her current medication (Tr. 545).

Dr. Robert Spray performed a psychological consultative examination on January 18, 2013 (Tr. 414-20). Dr. Spray noted that the claimant seemed agitated, but had an appropriate and variable affect (Tr. 415). He also noted her thoughts tended to be circumstantial, tangential, and derailed, and that she had difficulty staying on task (Tr. 415). As to her speech, Dr. Spray found it was normal in fluency, rate, and volume, but pressed at times (Tr. 415). Dr. Spray's cognition testing revealed the claimant had adequate cognitive functioning (Tr. 416-17). Dr. Spray diagnosed the claimant with major depression, recurrent, generalized anxiety disorder, pain disorder, and personality disorder with borderline and avoidant features (Tr. 416). He opined that her communication was hindered by her thought processes; her attention and concentration

may wax and wane depending upon her level of anxiety and subjective pain; her ability to persist with tasks could be variable in a job setting; and that she may have difficulty completing tasks in a timely manner due to subjective pain and high levels of anxiety (Tr. 417).

Dr. Ronald Schatzman performed a physical consultative examination on February 5, 2013 (Tr. 421-30). Dr. Schatzman found, *inter alia*, that the claimant had no point tenderness or swelling in her hands, knees, or legs; full grip strength bilaterally; normal deep tendon reflexes in all extremities; full range of motion and no tenderness in her cervical spine, thoracic spine, and lumbar-sacral spine; 0/18 fibromyalgia tender points; and a safe and stable gait with appropriate speed (Tr. 424). He assessed the claimant with morbid obesity, anxiety by history, depression by history, fibromyalgia by history, back pain by history, degenerative disc disease by history, hypothyroidism by history, sciatica by history, and migraine headaches by history (Tr. 425).

At the administrative hearing, the claimant testified as to her past work history, her impairments, and her medical treatment (Tr. 80-115). She stated her most significant limitation was fibromyalgia, which caused muscle pain and weakness "everywhere" (Tr. 90-91). She indicated she could not fix her hair because she was unable to hold her arms above her head that long (Tr. 91). She testified that she could sit for ten or fifteen minutes before needing to change positions, could walk from her car into a store, but could only walk halfway across her yard before needing to stop (Tr. 93). The claimant further testified that muscle spasms in her legs cause the backs of her knees to swell, prevent her from walking, and cause her to fall frequently, and that she experiences

migraine headaches two to four times per month (Tr. 94, 103-105). She also stated her hands, arms, legs, and feet are consistently numb, and that she has no ability to grip (Tr. 95). As to her mental impairments, the claimant stated she was very depressed and moody, and was unable to concentrate due to her pain (Tr. 101).

In his written decision, the ALJ summarized the medical evidence, including the claimant's hearing testimony, and a Third Party Function Report submitted by her neighbor. The ALJ noted Dr. Spray's examination findings, but did not provide any analysis or assign any weight with regard to his assessment (Tr. 67). The ALJ then found the claimant not completely credible, and discounted the Third Party Function Report in part because it was based on the claimant's subjective complaints (Tr. 67-70). The ALJ then gave great weight to the state reviewing physicians' and psychologists' opinions, finding they were fully supported by and consistent with the medical record as a whole (Tr. 70-71).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the

physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ summarized Dr. Spray's report, but provided no analysis at all in relation to the pertinent factors. This was important because Dr. Spray raised questions about the claimant's ability to communicate, concentrate, and persist with and complete tasks in a timely manner (Tr. 417). The Commissioner argues that Dr. Spray's psychological limitations were not stated with certainty and were contradicted by other evidence in the record; however, the ALJ offered no such explanation for declining to impose any correlating restrictions when forming the claimant's RFC. *See, e.g., Haga v. Astrue,* 482 F.3d 1205, 1207–08 (10th Cir. 2007) ("[T]his court may not create or adopt post hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."). Furthermore, the ALJ appeared to adopt Dr. Spray's opinion as to the claimant's mental impairment diagnoses; however, he rejected without explanation Dr. Spray's opinions concerning the effects of her mental impairments on her adaptive functioning (Tr. 67). The ALJ should have explained why he found certain aspects of Dr. Spray's findings persuasive but not others. *See Haga*, 482 F.3d at 1208 ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are

favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

The claimant also contends, *inter alia*, that the ALJ erred in analyzing her credibility. At the time of the ALJ's decision, a credibility determination was governed by Soc. Sec. Rul. 96-7p. *See, e .g., Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). But the Commissioner issued a ruling on March 16, 2016, which eliminated the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016). "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007), *quoting Sloan v. Astrue,* 499 F.3d 883, 889 (8th Cir. 2007). Although the ALJ's credibility analysis was arguably sufficient under the old standard, the record does not reflect how the ALJ would have evaluated the claimant's subjective statements under Soc. Sec. Rul. 16-3p.[3] Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for evaluation in accordance with the new standard.

---

[3] While it is arguable that the evidence cited by the ALJ in support of his credibility determination would likewise have satisfied Soc. Sec. Rul. 16-3p, thus obviating the need for reversal and remand, *see, e. g., Wellenstein v. Colvin,* 2015 WL 5734438, at *11 (N.D. Iowa Sept. 30, 2015) (noting that the Court of Appeals for the Eighth Circuit denied remand for consideration of a new social security ruling upon finding that "although the policy changed during the pendency of the case, the policy did not affect the case."), *citing Van Vickle v. Astrue,* 539 F.3d 825, 829 n.6 (8th Cir. 2008), the undersigned Magistrate

**Conclusion**

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 28th day of March, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**

---

Judge finds that any re-evaluation of the evidence in light of the new standard is not for this court to make on review but rather for the ALJ to consider in the first instance.